# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00085-CR

**Mark A. Clark, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT NO. CR-2010-276, HONORABLE LLOYD DOUGLAS SHAVER, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury acquitted appellant Mark A. Clark of attempted aggravated sexual assault but convicted him of attempted sexual performance by a child and assessed punishment at seven years' imprisonment. *See* Tex. Penal Code §§ 43.25(b) (defining offense of sexual performance by a child), 15.01 (defining criminal attempt). The State's case rested primarily on the minor complainant's[1] testimony that Clark, a lawyer, had asked the complainant to model lingerie for him at his law office in exchange for money and free legal services and on extraneous-offense evidence that Clark had propositioned another young client at his law office to model lingerie for him in exchange for money. In six issues, Clark argues: (1) the evidence was insufficient to support his conviction; (2) the trial court improperly admitted the extraneous-offense evidence; and (3) the trial court improperly excluded evidence of the complainant's character. We affirm the trial court's judgment.

---

[1] To protect her identity, the minor complainant will be referred to as "complainant."

## BACKGROUND

In June of 2009, the twelve-year-old complainant and her mother met Clark—a fifty-two-year old lawyer—seeking his legal services in regard to an outcry of sexual abuse the complainant had made against her father and grandfather. After discussing the alleged sexual abuse with Clark at his office, the complainant and her mother were preparing to leave and mentioned they were going to go to Wal-Mart next to buy the complainant something for a dollar. Clark told them they could not buy anything for a dollar and gave the complainant's mother a $100 bill wrapped around his business card.

Later that day, Clark called the complainant at home and asked if she could come to his office the next day to assist him with paperwork. The complainant's mother drove her to Clark's office the next day as planned. But after her mother left, the complainant testified that instead of giving her paperwork, Clark gave her a red plastic cup he said was filled with lemonade but that tasted like alcohol. He then, according the complainant's testimony, asked her to model lingerie for him in exchange for $1,000 and Clark not charging her mother for legal services. The complainant described the lingerie as a black see-through shirt with long sleeves that were "poofy at the end" and that Clark would have been able to see her "private parts" if she had modeled it.

The complainant additionally testified that Clark made several other inappropriate remarks to her, including asking her if she thought anything could fit in her "lower area," telling her that he had a big penis, asking her if she liked to watch pornographic movies, and asking her whether she thought it was wrong that the playboy bunnies lived with an old man. While he was speaking, the complainant testified that Clark was petting a cat on his lap and told her that he wished she

2

would be like the cat because it would let him pet it and pet it, but that he would stop whenever the cat wanted him to stop. After she refused to model the lingerie, the complainant testified that Clark told her to call her mother. On the way home from Clark's office, the complainant informed her mother of Clark's conduct, and they contacted the police that day.

The police searched Clark's office which was located in an old home that had been renovated into an office. In the bathroom of the office, the police found a trash can containing an empty bottle of Mike's Hard Lemonade and red plastic cups were discovered in the kitchen. In the bathroom, the police also noticed a large pull-out cabinet used as a hamper. Upon pulling the cabinet all the way out, the police discovered a secret space behind the cabinet drawer containing several plastic bags filled with multiple pieces of lingerie, magnum-sized condoms, K-Y Jelly, a six-pack of Mike's hard lemonade with one bottle missing, bottles of alcohol, and sex toys. The complainant was not able to identify the lingerie Clark allegedly showed her from the bags of lingerie discovered in the bathroom.

### ATTEMPTED SEXUAL PERFORMANCE BY A CHILD

In his first two points of error, Clark contends the evidence is insufficient to support his conviction for attempted sexual performance by a child. *See* Tex. Penal Code §§ 15.01, 43.25(b). A person commits the offense of sexual performance by a child "if knowing the character and content thereof, he employs, authorizes, or induces a child . . . to engage in sexual conduct or a sexual performance." *Id.* § 43.25(b). A person commits an attempted offense, "if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." *Id.* § 15.01(a); *see also Yalch v. State*,

3

743 S.W.2d 231, 233 (Tex. Crim. App. 1988) (discussing elements of criminal attempt). Therefore, the offense of attempted sexual performance by a child is committed if: (1) the defendant; (2) with specific intent to employ, authorize, or induce a child to engage in sexual conduct or a sexual performance; (3) does an act amounting to more than mere preparation; (4) that tends but fails to effect the commission of sexual conduct or a sexual performance by a child. Tex. Penal Code §§ 15.01, 43.25(b); *see also Chen v. State*, 42 S.W.3d 926, 929 (Tex. Crim. App. 2001).

Clark was charged with attempted sexual performance by a child by attempting to induce the complainant to engage in sexual conduct or a sexual performance. The term "sexual performance," however, is defined as any performance that includes "sexual conduct by a child." Tex. Penal Code § 43.25(a)(1). Therefore, the charged offense required evidence that Clark attempted to induce the complainant to engage in sexual conduct. "Sexual conduct" is defined as including, among other things, "sexual contact" and "lewd exhibition of the genitals, the anus, or any portion of the female breast below the top of the areola." *Id.* § 43.25(a)(2).

Clark argues there is no evidence that he attempted to induce the complainant to engage in sexual conduct because the State did not prove the lingerie he asked the complainant to wear would have resulted in a lewd exhibition of her genitals and there was no evidence he intended the complainant to engage in sexual contact. In this case, Clark was charged with *attempting* to induce a child to engage in sexual conduct. Therefore, our focus is on whether Clark intended to commit the offense of sexual performance by a child, which can be inferred from his acts, words, or conduct. *See Alexander v. State*, 906 S.W.2d 107, 110–111 (Tex. App.—Dallas 1995, no pet.); *see also Chen*, 42 S.W.3d at 930 (sufficient evidence of intent when "appellant's goal was to commit

4

the offense of sexual performance by a child"). The complainant testified that Clark asked her to model a piece of lingerie that was "see-through" and would have revealed her "private parts." Further, the complainant testified that Clark gave her an alcoholic drink, asked her if she liked to watch pornographic movies, told her that he had a big penis, asked her if she thought anything "could fit in [her] lower area," and told her that he wished she would be like his cat who he could pet.[2] We conclude that this evidence, when taken together, is sufficient to allow a rational trier of fact to find beyond a reasonable doubt that Clark intended to induce the complainant to engage in sexual conduct by either sexual contact or a lewd exhibition of her genitals, and that he committed an act amounting to more than mere preparation that tended but failed to effect the commission of the offense. *See Alexander*, 906 S.W.2d at 110–111 (evidence defendant asked complainant to remove her clothes so that he could take her picture and told her he would show her parts she had never seen before while pointing at his lower body, when taken together, sufficient to uphold conviction for attempted sexual performance by a child).

Clark additionally argues the evidence is insufficient to uphold his conviction because there is no evidence he attempted to induce the complaint to engage in a "performance." The statute, however, "criminalizes the inducement of a child's sexual conduct regardless of whether it amounts to a sexual performance." *Dornbusch v. State*, 156 S.W.3d 859, 870 (Tex. App.—Corpus Christi

---

[2] In addition, the defense called two adult women who had engaged in consenting sexual relations with Clark and testified that he would bring lingerie to their meetings for them to wear before engaging in sexual activity. The jury was free to consider this evidence on the attempted sexual performance by a child charge. *See Atkins v. State*, No. 05-07-00586-CR, 2008 WL 2815087, at *4 (Tex. App.—Dallas July 23, 2008, pet. ref'd) (mem. op.) (holding sufficient evidence that defendant had intended to induce minor to engage in sexual conduct when defendant had engaged in similar conduct with adults that had resulted in sexual activity).

2005, pet. ref'd); *see also Summers v. State*, 845 S.W.2d 440, 442 (Tex. App.—Eastland 1992, no pet.). As we have already determined there was sufficient evidence Clark attempted to induce the complainant to engage in sexual conduct, the State is not required to further prove an attempted sexual performance. *See Dornbusch*, 156 S.W.3d at 870; *Summers*, 845 S.W.2d at 442.

Regardless, we conclude there is also sufficient evidence that Clark attempted to induce the complainant to engage in a sexual performance. "Sexual performance" means any "performance or part thereof that includes sexual conduct by a child." Tex. Penal Code § 43.25(a)(1). "Performance" is defined as "any play, motion picture, photograph, dance, or other visual representation that can be exhibited before an audience of one or more persons." *Id*. § 43.25(a)(3). Under the statute, the term "sexual performance" includes non-pornographic and non-commercial sexual conduct by children, and recording the sexual performance on film or other media is not an element of the offense. *See Dornbusch*, 156 S.W.3d at 871; *see also Emenhiser v. State*, 196 S.W.3d 915, 930 (Tex. App.—Fort Worth 2006, pet. ref'd). Further, nothing in the definition of performance "suggests that the exhibition induced by the accused must be for the benefit of a third person as opposed to the accused himself." *Emenhiser*, 196 S.W.3d at 930. Rather, the definition specifically provides that the exhibition can be for an audience of only one person. *See id.*; *see also* Tex. Penal Code § 43.25(a)(3).

A sexual performance therefore is an exhibition of sexual conduct to be viewed by an audience of at least one, and as previously discussed, sexual conduct includes a lewd exhibition of the genitals, the anus, or any portion of the female breast below the top of the areola. Tex. Penal Code § 43.25(a)(1) & (2). Here, the complainant testified that Clark asked her to model for him

lingerie that was "see-through" and would have shown her "private parts." The standard for determining whether the evidence is legally sufficient to support a conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 315–19 (1979) (emphasis in original); *see also Garcia v. State*, 367 S.W.3d 683, 686–67 (Tex. Crim. App. 2012). We conclude this evidence is sufficient to allow a rational trier of fact to conclude beyond a reasonable doubt that Clark attempted to induce the complainant to engage in an exhibition of sexual conduct to be viewed by him.

Having found sufficient evidence to uphold the conviction for attempted sexual performance by a child, we overrule Clark's first and second points of error.

### ADMISSION OF EXTRANEOUS OFFENSE

During opening statements, Clark's attorney argued that the complainant had a character for lying, that she had lied to the authorities before, and that she was motivated to lie in this case for money. In rebuttal, the State during its case-in-chief called, K.E.,[3] another former client of Clark's, who testified that when she was seventeen years old and pregnant, Clark had asked her to come to his office because he had a job for her. Upon arriving at his office, K.E. testified that Clark showed her a picture in a magazine of a woman wearing red lingerie, asked her if she would wear the lingerie in the picture in exchange for money, and asked her to accompany him to a motel where he would take pictures of her in the lingerie. K.E. refused Clark's offer and contacted the police.

---

[3] We will refer to the witness by her initials to protect her identity.

In his third point of error, Clark contends the trial court abused its discretion by admitting K.E's testimony. The State argues the evidence was admissible because Clark advanced a theory of fabrication during his opening statement, thereby opening the door for the State to admit evidence of similar extraneous offenses committed by Clark for the purpose of rebutting his suggestion that the complainant was fabricating her testimony. *See Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008). Clark acknowledges that he accused the complainant during his opening argument of fabricating her allegations and that his fabrication defense entitled the State to introduce extraneous-offense evidence in rebuttal. *See id.* Clark, however, argues that K.E.'s testimony was inadmissible because the extraneous offense was not sufficiently similar to the charged offense to be relevant rebuttal evidence.[4] We review a trial court's admission of extraneous-offense evidence for an abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1991).

While extraneous-offense evidence is inadmissible to show character conformity, when the defense in its opening statement advances a theory that a minor complainant has fabricated allegations of sexual abuse—as in this case—the State is entitled to rebut the defense's fabrication theory with evidence "that a defendant has committed similar sexual assaults against unrelated and unconnected children." *Bass*, 270 S.W.3d at 562. To be admissible for the purpose of rebutting a fabrication or "frame-up" defense, however, the "extraneous misconduct must be at least similar to

---

[4] The State argues Clark failed to preserve this objection for appeal. We disagree. Clark objected to the testimony on the grounds that the extraneous offense was not relevant because of the difference in the victims' ages and that the extraneous offense did not constitute a sexual performance by a child. We conclude the objection sufficiently apprised the trial court that Clark was objecting to the testimony on the grounds that the extraneous offense was not sufficiently similar to the charged offense to be relevant and admissible. *See* Tex. R. App. P. 33.1.

the charged offense." *Wheeler v. State*, 67 S.W.3d 879, 887 n.22 (Tex. Crim. App. 2002); *see also Blackwell v. State*, 193 S.W.3d 1, 13 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) ("To be probative, the extraneous offense evidence admitted to rebut a defensive theory must be similar to the charged offense.").

Here, both the extraneous offense and the charged offense involved girls seventeen years of age or younger who had sought Clark's legal services; both occurred in Clark's office after Clark had lured them there under false pretenses; and in both instances, Clark asked the young women to model lingerie for him in exchange for money. Thus, the extraneous-offense evidence tended to disprove Clark's fabrication defense as it showed that, under similar circumstances, Clark had propositioned another young client to model lingerie for him in exchange for money. *See Halliburton v. State*, 528 S.W.2d 216, 219 (Tex. Crim. App. 1975) ("The ultimate question is whether the extraneous offense tends to disprove the appellant's explanation of the primary offense."). Accordingly, we conclude the extraneous-offense evidence was sufficiently similar to the charged offense to refute the defense's theory that the complainant had fabricated her allegations. *See Bass*, 270 S.W.3d at 563. As we conclude the trial court did not abuse its discretion by admitting K.E.'s testimony, we overrule Clark's third point of error.[5]

## EXCLUSION OF COMPLAINANT'S CHARACTER EVIDENCE

At trial, Clark sought to call three witnesses for the purpose of proving "numerous specific incidents in which the complainant had made false allegations against people and told lies

---

[5] The State additionally argues on appeal the extraneous-offense evidence was admissible under Texas Rule of Evidence 404(b) to prove Clark's intent. As we have concluded the evidence was admissible to refute Clark's allegations of fabrication, we do not address this issue.

on various topics." Clark argued only one theory of admissibility at trial: that the evidence was admissible under Texas Rule of Evidence 404(a)(2) to prove a pertinent character trait of the complainant, which he described to the trial court as a trait of "consistently making false claims to law enforcement." The State raised numerous objections, including an objection under Rule of Evidence 608(b) that Clark was improperly attempting to introduce specific instances of conduct by the complainant for the purpose of attacking her general credibility. *See* Tex. R. Evid. 608(b). The trial court allowed Clark's witnesses to testify as to their opinion of the complainant's character for truthfulness but excluded testimony regarding any specific instance of conduct by the complainant.

In his last three points of error, Clark contends the trial court abused its discretion by excluding the witnesses' testimony. We review a trial court's exclusion of evidence for abuse of discretion. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). An abuse of discretion occurs when a trial court's decision is so clearly wrong that it lies outside the zone of reasonable disagreement. *Gonzales v. State*, 117 S.W.3d 831, 839 (Tex. Crim. App. 2003). As Clark does not address each witness's testimony individually but consolidates his points of error and collectively asserts all of the testimony was admissible under a single legal theory, we likewise will address these issues collectively.

In general, evidence of a person's character may not be used to prove that she behaved in a particular way at a given time. Tex. R. Evid. 404(a); *Tate v. State*, 981 S.W.2d 189, 192 (Tex. Crim. App. 1998). Texas Rule of Evidence 404(a)(2) creates an exception to this rule, permitting an accused in a criminal case to introduce evidence of a pertinent character trait of the alleged victim of the offense on trial. *See* Tex. R. Evid. 404(a)(2); *Martinez v. State*, 17 S.W.3d 677, 687 (Tex.

10

Crim. App. 2000). But under Texas Rule of Evidence 405, such evidence generally must only take the form of reputation or opinion testimony. Tex. R. Evid. 405(a); *Martinez*, 17 S.W.3d at 687. Only if the alleged victim's character trait is an essential element of a charge, claim, or defense may the accused introduce specific instances of the victim's conduct under Rule 405(b). *See* Tex. R. Evid. 405(b).

Clark argues on appeal that the complainant's alleged character trait of lying to law enforcement was an essential element of his defense that she had fabricated the allegations in the current case, and therefore, he was entitled to introduce specific instances of her lying at trial. Clark did not, however, argue at trial that the complainant's character was an essential element of his defense nor argue the evidence was admissible under Rule 405(b). Accordingly, we conclude he has waived this issue on appeal. *See* Tex. R. App. P. 33.1.

Even if Clark had preserved error, we would still conclude his argument has no merit. Character per se is almost never an essential element of a charge or defense in criminal cases. *Gilbert v. State*, 808 S.W.2d 467, 471 n.5 (Tex. Crim. App. 1991); *Tate*, 981 S.W.2d at 192 & n.5. Here, proving that the complainant had fabricated her allegations is not dependent exclusively upon the character of the victim. Accordingly, we would conclude the testimony was not admissible under Rule 405(b). *See Tate*, 981 S.W.2d at 192 & n.5 (victim's character not essential element of a claim of self-defense because proving who was aggressor did not depend exclusively upon character of victim). Further, Clark explained to the trial court that he sought to introduce the witnesses' testimony because it showed "again in this case [the complainant] acted in conformity with that pertinent character trait and again made a false report to law enforcement about alleged law

11

violations." This is precisely the inferential chain of logic barred by Texas Rule of Evidence 608(b), which mandates that "specific acts not resulting in conviction may not be used to demonstrate the witness's untrustworthy nature."[6] *See Lopez v. State*, 18 S.W.3d 220, 225 (Tex. Crim. App. 2000); *see also Hammer v. State*, 296 S.W.3d 555, 564 (Tex. Crim. App. 2009).[7] Accordingly, we would conclude the trial court did not abuse its discretion in excluding the testimony. We overrule Clark's fourth, fifth, and sixth points of error.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Goodwin, and Field

Affirmed

Filed: February 19, 2014

Do Not Publish

---

[6] Texas Rule of Evidence 608(b) provides "specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence." Tex. R. Evid. 608(b).

[7] Clark did not argue the evidence was admissible to show bias, motive, or some other relevant non-character purpose. *See Hammer v. State*, 296 S.W.3d 555, 564–566 (Tex. Crim. App. 2009).